# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| PATRICK BARRY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-17-291-P |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| Defendant. | ) | |

# ORDER

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his application for disability insurance ("DIB") and supplemental security income benefits ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter AR___), and the parties have briefed the issues. The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

*I. Administrative History and Agency Decision*

On December 16, 2013, Plaintiff protectively filed applications for DIB and SSI alleging that he became disabled on December 31, 2008, due to mental issues, back pain, and bad knees. AR 16, 203, 208. At a hearing conducted before an Administrative Law Judge ("ALJ"), Plaintiff amended his alleged onset date to December, 16, 2013. AR 33-34. A vocational expert ("VE") also testified at the hearing. The ALJ issued a decision

finding that Plaintiff was not disabled within the meaning of the Social Security Act. Following the agency's well-established sequential evaluation procedure, the ALJ found at the first step that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013. The ALJ further found that Plaintiff had not engaged in substantial gainful activity since December 16, 2013, the amended alleged onset date. At the second step, the ALJ found that Plaintiff had severe impairments of degenerative disc disease of cervical and lumbar spines; osteoarthritis of knees status-post remote right arthroscopy; major depressive disorder; anxiety disorder; generalized anxiety disorder; post-traumatic stress disorder; and amphetamine, marijuana, LSD, and alcohol dependence in reported remission. At the third step, the ALJ found that these impairments were not per se disabling as Plaintiff did not have an impairment or combination of impairments that met or medically equaled the requirements of a listed impairment.

At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at the light exertional level in that he could lift up to 20 pounds with no more than frequent lifting or carrying of up to 10 pounds; stand/walk 6 hours out of an 8-hour workday; and sit 6 hours out of an 8-hour workday. The ALJ also included additional limitations as follows:

> [Plaintiff] is able to understand, remember, and carryout simple and some complex instructions consistent with semiskilled work that is repetitive and routine in nature and able to relate and interact with co-workers and supervisors on a work-related basis only with no to minimal interaction with the general public. [Plaintiff] can adapt to a work situation with these limitations/restrictions and his medications would not preclude him from remaining reasonably alert to perform required functions presented in a work setting.

AR 20. Based on this RFC finding and testimony regarding the requirements of Plaintiff's previous work, the ALJ determined that Plaintiff was unable to perform any past relevant work.

Reaching the fifth and final step of the required sequential analysis, and relying on the VE's testimony as to the ability of a hypothetical individual with Plaintiff's work history, age, education, and RFC, the ALJ found that Plaintiff was capable of performing jobs that existed in the national economy. These included work as a press machine operator, production inspector, and office cleaner. Based on these findings, the ALJ concluded that Plaintiff had not been under a disability, as defined by the Social Security Act, from December 16, 2013, through the date of the decision.

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481; *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009).

II.   *Issues Raised*

Plaintiff argues that the ALJ legally erred by failing to weigh the medical opinion evidence under the correct legal standards. Plaintiff's Opening Brief (Doc. # 15) at 5-14. Plaintiff also asserts that the ALJ erred in determining that Plaintiff can perform significant gainful activity. Pl.'s Br. at 14-15.

III.   *General Legal Standards Guiding Judicial Review*

The Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether the correct legal standards were applied. *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010); *Doyal v. Barnhart*, 331 F.3d 758,

760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

The Social Security Act authorizes payment of benefits to an individual with disabilities. 42 U.S.C. § 401 et seq. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); *see* 20 C.F.R. §§ 404.1509 (duration requirement), 416.909 (same). Both the "impairment" and the "inability" must be expected to last not less than twelve months. *Barnhart v. Walton*, 535 U.S. 212 (2002).

The agency follows a five-step sequential evaluation procedure in resolving the claims of disability applicants. *See* 20 C.F.R. §§ 404.1520(a)(4), (b)-(g), 416.920(a)(4), (b)-(g). "If the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of her age, education, and work experience." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). "The claimant is entitled to disability

4

benefits only if he [or she] is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

IV. *Analysis*

A. <u>The ALJ did not err in weighing the medical opinion evidence.</u>

1. *The ALJ used the correct legal standards when considering the treating physician's opinion.*

Plaintiff argues that the ALJ failed to weigh the opinion of Plaintiff's treating physician under the proper legal framework. Pl.'s Br. at 8-11. The Court disagrees. The ALJ must follow a two-step process, generally known as the treating physician rule, when considering a treating physician's medical opinion about a claimant. The ALJ "must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) (internal quotation and citation omitted). "If the ALJ finds that the opinion is well-supported, [the ALJ] must then confirm that the opinion is consistent with other substantial evidence in the record." *Id.* (quotation and citation omitted). If the ALJ determines that the medical opinion is deficient in either of these respects, the ALJ may give the opinion less than controlling weight. *Id.* If the ALJ finds that a medical opinion is not entitled to controlling weight, the ALJ must proceed to the second phase of the inquiry to determine what weight has been given to the opinion "and give good reasons, tied to the factors specified in the [governing] regulations for this particular purpose, for the weight assigned." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). *See* 20 C.F.R. §§404.1527 (listing the factors), 416.927 (same).

5

Under this legal framework, then, the opinion of a treating physician is properly denied controlling weight if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence. And the opinion may be rejected outright if the ALJ gives "specific, legitimate reasons for doing so," relating to such matters as "the degree to which the physician's opinion is supported by relevant evidence," the "consistency between the opinion and the record as a whole," and any "other factors . . . which tend to support or contradict the opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal quotation marks omitted). Here the ALJ rejected the opinion Dr. Fidel had indicated on check boxes of the medical statement form for the following reasons:

> Dr. Fidel's Medical Source Statement . . . is simply an attempt to modify a Social Security form to add non-work related definitions. Form SSA-4734-F4-SUP, at [Section] III Functional Capacity Assessment[,] notes that the Section [I] check boxes are Summary Conclusions to support work-related mental functional limitations. Dr. Fidel's check box form is not supported by the overall evidence of record[.]

R. at 22.

> *a. The ALJ provided proper reasons for discounting Dr. Fidel's opinion.*

On April 17, 2015, Dr. Fidel completed a form entitled Mental Medical Source Statement. AR 308-10. As the ALJ noted in his decision, and as he and Plaintiff's counsel discussed at the hearing, Dr. Fidel's form was modified from a standard Social Security form. *See* AR 22, 50-52 (ALJ discussing amended form). Both the standard form, Form SSA-4734-F4-SUP ("MRFCA"), and Dr. Fidel's form are comprised of three sections.

6

*Compare* MRFCA, *with* AR 308-10.[1] Section I of both forms is titled "Summary Conclusions" and "is for recording summary conclusions derived from the evidence in file." MRFCA, Sec. I; AR 308; *see also Carver v. Colvin*, 600 F. App'x 616, 618 (10th Cir. 2015). On both forms, the instructions for this section explicitly state that "[d]etailed explanation of the degree of limitation for each category (A through D), as well as any other assessment information you deem appropriate, is to be recorded in Section III (Functional Capacity Assessment)."

Section III of the MRFCA, the "Functional Capacity Assessment," is for recording a medical consultant's formal mental functional capacity assessment. *See Carver*, 600 F. App'x at 618. The MRFCA instructions for Section III direct the medical consultant to:

> Record in this section the elaborations on the preceding capacities. Complete this section ONLY after the SUMMARY CONCLUSIONS section has been completed. Explain your summary conclusions in narrative form. Include any information which clarifies limitation or function. Be especially careful to explain conclusions that differ from those of treating medical sources or from the individual's allegations.

MRFCA, Sec. III. The Tenth Circuit has explained that while "[t]he purpose of Section I is chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's. . . degree of limitation, [i]*t is the narrative* written by the psychiatrist or psychologist in Section III *that adjudicators are to use as the assessment of RFC*." *Carver*, 600 F. App'x at 618 (internal quotation marks, alterations, and citations omitted).

---

[1] SSA-4734-F4-SUP, Mental Residual Functional Capacity Assessment. http://ssaconnect.com/tfiles/SSA-4734-F4-SUP.pdf (last accessed March 27, 2018).

Dr. Fidel, however, did not complete Section III of his form. *See* AR 310. As such, he provided only a list of checked boxes with no narrative description or explanation of functional limitations. The ALJ cited Dr. Fidel's lack of explanation as a reason for discounting Dr. Fidel's opinion. AR 22 ("Form SSA-4734-F4-SUP, at [Section] III Functional Capacity Assessment[,] notes that the Section [I] check boxes are Summary Conclusions to support work-related mental functional limitations.").

Though it is not problematic to use check box forms to specify limitations that are also explained on the forms or in an associated report, it was not improper for the ALJ to discount the conclusory limitations provided by Dr. Fidel when there was no accompanying explanation. *See Simmons v. Colvin*, 635 F. App'x 512, 515 (10th Cir. 2015) (relying on *Hamlin v. Barnhart*, 365 F.3d 1208, 1223 (10th Cir. 2004) to affirm ALJ rejection of limitations noted on check-box form by treating physician); *Hamlin*, 365 F.3d at 1223 (noting "such an evaluation form is insufficient to constitute substantial evidence when it stands alone and unaccompanied by thorough written reports or testimony"). The Tenth Circuit has declined to adopt a categorical position that check-box forms from treating physicians should be rejected, but has indicated that the reviewing court should consider the facts of the case, including the amount of information actually conveyed on the form and whether other materials in the record support the conclusions on the form. *See Andersen v. Astrue*, 319 F. App'x 712, 723-24 (10th Cir. 2009).

Here, the form itself was designed for the medical consultant to provide specific information, including a "[d]etailed explanation of the degree of limitation." AR 308. But as the ALJ noted, Dr. Fidel failed to provide information other than the minimal

checkmarks indicating limitations. AR 22, 308-10; *see also* AR 51 (ALJ asking "where are the mental work related limitations that are required on the – on our form, and alluded to in [Dr. Fidel's] form?"). In contrast, forms prepared by the State agency consultants (which the ALJ did rely on) included narrative explanations of the limitations listed in the summary conclusions. *See* AR 66-68, 102-104. Where additional information about or explanation of limitations could be provided, but is not, such omission can be a proper reason for discounting limitations. *Cf. Scott v. Berryhill*, 695 F. App'x 399, 403 (10th Cir. 2017) (affirming decision in which ALJ discounted a treating physician's "check-sheet" form when ALJ provided specific reasons for the decision, including that the form "did not provide a substantive explanation for the results checked"); *Andersen*, 319 F. App'x at 723 (reversing ALJ's decision to discount physicians' check box form, but noting that check-box form at issue was a disability insurance form that did not ask for, or provide space for, rationales or clinical comments and "[t]hus, it is not surprising that the two physicians recorded somewhat limited clinical comments[.]"); *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (distinguishing between the minimal information provided in the agency check-box form (such as MRFCA) and the more substantive information provided on the form used by plaintiff's physician, which was used during an examination and was "clearly set up to record the results of a thorough physical examination; it was not the agency's checklist RFC form"); *see also* 20 C.F.R. §§ 404.1527(c)(3) (ALJ will consider supportability for treating physician's opinion: "[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion"), .1527(c)(6) (ALJ will

consider other factors that tend to support or contradict a treating physician's opinion), 416.927(c)(3) (same), .927(c)(6) (same).

Further, unlike in *Andersen*, this was not an instance in which the ALJ could have, but did not, look to "other materials that could lend support to the conclusions in the form[.]" *See Andersen*, 319 F. App'x at 724. In fact, the ALJ did look at Dr. Fidel's treatment notes and found they did not support the conclusions in Dr. Fidel's form. *See* AR 22. Plaintiff first saw Dr. Fidel on December 26, 2013, and saw him seven more times through March 13, 2015. AR 269-72, 282-307. The ALJ specifically discussed seven of the eight visits. AR 21-22.[2]

And, as such, the ALJ also properly relied on the fact that Dr. Fidel's impairment ratings on the form were more limiting than his own treatment notes would suggest. *See Simmons*, 635 F. App'x at 515; *Watkins*, 350 F.3d at 1300. As set forth by the ALJ, Dr. Fidel's treatment notes indicated that Plaintiff was diagnosed with major depressive disorder without psychotic features, generalized anxiety disorder with panic and

---

[2] Plaintiff further argues that the ALJ failed to weigh the Dr. Fidel's opinion evidence under the correct legal standards because "nothing in [the ALJ's] decision indicates he recognized Dr. Fidel as [Plaintiff's] treating physician." Pl.'s Br. at 12. However, the ALJ discussed all but one of Plaintiff's treatments with Dr. Fidel, thus making clear that Dr. Fidel was treating Plaintiff and that Dr. Fidel was, therefore, Plaintiff's treating physician. *See* AR 21-22.

Additionally, though the ALJ did not specify whether he was giving Dr. Fidel's opinion controlling weight, any error in this regard is harmless because the ALJ's statement that Dr. Fidel's opinion was only entitled to "little weight" makes it clear that the ALJ did not afford that opinion controlling weight. *See Tarpley v. Colvin*, 601 F. App'x 641, 643-44 (10th Cir. 2015) (finding "any imaginable oversight" to be "clearly harmless" when ALJ did not expressly say he was not affording treating physicians' opinions controlling weight but explained that they were entitled to no weight because they were inconsistent with the medical records and there was substantial evidence to support that decision).

agoraphobia, and PTSD. AR 21-22. Plaintiff complained of poor focus and concentration, as well as low energy, and depressed and anxious mood. *Id.* But Dr. Fidel's psychiatric examinations consistently showed that Plaintiff's judgment and insight was intact and appropriate, Plaintiff was alert and oriented, and Plaintiff's memory and attention/concentration were intact. *Id.*; *see also* AR 269-72, 282-307; 20 C.F.R. §§404.1527(c)(3) (ALJ will consider supportability for treating physician's opinion: "[t]he more a medical source presents relevant evidence to support an opinion . . ., the more weight we will give that opinion"), 416.927(c)(3) (same). Finally, the ALJ also relied on lack of support from "the overall evidence of record." AR 22; *see also* 20 C.F.R. §§404.1527(c)(4) (ALJ will consider consistency with the record as a whole when evaluating treating physician's opinion), 416.927(c)(4) (same). The Court finds no error in the reasons the ALJ provided for discounting Dr. Fidel's opinion.

> b. *The ALJ considered relevant factors when weighing Dr. Fidel's opinion.*

Plaintiff further argues that the ALJ failed to weigh the Dr. Fidel's opinion evidence under the correct legal standards because the ALJ did not apply more than one of the relevant regulatory factors. Pl.'s Br. at 12-14; *see also Watkins*, 350 F.3d at 1301 (listing factors); 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) (same). Though the regulations set forth several factors to be considered when evaluation medical opinions, an ALJ is not required to mechanically apply all of the prescribed factors in a given case; rather, it is sufficient if the ALJ "provide[s] good reasons in his decision for the weight he [gives] to the treating sources' opinions." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *see* SSR 96-3p, 2006 WL 2329939, at *5 (Aug. 9, 2006) ("Not every factor for weighing

11

opinion evidence will apply in every case."). The explanation "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins*, 350 F.3d at 1300 (internal quotation marks omitted). As set forth above, the ALJ's discussion included several factors, "the degree to which the physician's opinion is supported by relevant evidence," "consistency between the opinion and the record as a whole," and "other factors . . . which tend to support or contradict the opinion." *See id.* at 1301; AR 22. The ALJ's decision both made clear the weight he was giving to Dr. Fidel's opinions and provided "good" reasons for that weight. The Court finds no reversible error in the ALJ's evaluation of Dr. Fidel's opinion.

2. *The ALJ properly weighed the opinions of the State agency consultants.*

Plaintiff also alleges that the ALJ improperly weighed the evidence of the State agency psychological consultants. Pl.'s Br. at 11-12. The State agency psychological consultants found that Plaintiff can "perform simple and some complex tasks, can relate to others on a superficial work basis, can adapt to a work situation[,] but cannot relate to the general public." AR 22; *see also* AR 68, 104. Noting that the State agency psychologists had reviewed Plaintiff's records, the ALJ gave their findings "great weight" because they were "well supported by the overall evidence of record." AR 22. For the nonexamining consultants, the ALJ was required to consider their opinions, weigh those opinions using the applicable regulatory factors, and explain the weight given to the opinions. *See* 20 C.F.R. §§ 404.1527(c), (e)(2)(ii), 416.927(c), (e)(2)(ii); *see also Vigil v. Colvin*, 805 F.3d

1199, 1201-02 (10th Cir. 2015).  The ALJ did this.  *See* AR 22 (discussing Exs. 3A, 7A, and 8A).[3]

Plaintiff argues that the ALJ erred because, "[w]hen a treating physician's opinions conflict with the opinions of other medical sources, the ALJ must examine the other medical source's opinions to determine if they outweigh the treating physician's opinions, 'not the other way around.'"  Pl.'s Br. at 12 (quoting *Hamlin*, 365 F.3d at 1215).  Plaintiff implies that the ALJ erred because he gave Dr. Fidel's opinion little weight due to its inconsistency with State agency consultants' opinions.  *See* Pl.'s Br. at 12 ("The ALJ's decision indicates he found Dr. Fidel's [opinion] contradicted the opinions of the State agency psychological consultants.").  However, that is not the case—the inconsistency cited by the ALJ was with Dr. Fidel's own treatment records, as well as the overall evidence.  And to the extent Plaintiff is arguing that the ALJ should have examined the consultants' opinions to see if they outweighed the treating physician's opinion, the Court finds that the ALJ properly did so.  *See Scott*, 695 F. App'x 399, 404 (10th Cir. 2017) (finding that the ALJ properly examined a nonexamining physician's report vis-à-vis an examining physician's opinion when "[s]he gave specific, legitimate reasons for rejecting [the treating physician's] opinion, and carefully analyzed [the nonexamining consultant's]

---

[3] Plaintiff argues that the ALJ erred because did not apply more than one regulatory factor when evaluating the opinions of the State agency consultants.  Pl.'s Br. at 12-13.  As discussed above, however, an ALJ is not required to mechanically apply all of the prescribed factors in a given case; rather, it is sufficient if the ALJ "provide[s] good reasons in his decision for the weight he [gives] to the treating sources' opinions."  *Oldham*, 509 F.3d at 1258; *see* SSR 96-3p, 2006 WL 2329939, at *5 ("Not every factor for weighing opinion evidence will apply in every case.").  Plaintiff has failed to show reversible error.

opinion and its consistency with the evidence"). The Court finds no reversible error in the ALJ's evaluation of the State agency consultants' opinions.

B. <u>The ALJ did not err in determining that Plaintiff can perform significant gainful activity.</u>

Plaintiff's final argument is that the ALJ erred in finding that Plaintiff can perform significant gainful activity when the VE testified that hypothetical limitations would preclude employment. Pl.'s Br. at 14-15 (citing AR 55). The hypothetical limitations at issue, however, emanated from Dr. Fidel's opinion, which the Court has found the ALJ properly discounted. The ALJ was not required to accept the VE's opinion regarding the availability of jobs to a person subject to limitations he concluded did not exist. *See Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995). The VE's testimony that at least three jobs would be available to a hypothetical person of Plaintiff's age, education, and work history, with the RFC determined by the ALJ, provides substantial evidence for the ALJ's determination that Plaintiff is capable of performing work.

V. *Conclusion*

Based on the foregoing analysis, the decision of the Commissioner is AFFIRMED. Judgment will issue accordingly.

ENTERED this ___29th___ day of March, 2018.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE